Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES FALLS, individually and on behalf of other persons similarly situated,

Plaintiffs,

v.

SOULBOUND STUDIOS, LLC; SOULBOUND STUDIOS (USA); and DOES 1 through 50,

Defendants.

No. 2:21-cv-00922-JCC-TLF

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

NOTED ON MOTION CALENDAR: MAY 20, 2022

**ORAL ARGUMENT REQUESTED**

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF)

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS.................................................................................3

    A.    Procedural History ...............................................................................3

    B.    Contracts and Policies Governing Plaintiff's Purchases of CoE Content From SBS Through Payment Processor Xsolla ...........................4

    C.    Plaintiff's Allegations and Claims..........................................................7

III. AUTHORITY AND ARGUMENT .................................................................9

    A.    Legal Standard on Rule 12(b)(6) Motion to Dismiss....................................9

    B.    Plaintiff's Breach of Contract Claim Against SBS Fails as a Matter of Law .............................................................................................10

    C.    Plaintiff Fails to State a Claim Under the Consumer Protection Act .........15

    D.    Plaintiff's Unjust Enrichment Claim Fails Because a Contract Indisputably Governs the Relationship Between Plaintiff and SBS...........20

    E.    Plaintiff's Claim for Declaratory Relief Fails.............................................21

    F.    Plaintiff's Claims Should be Dismissed with Prejudice .............................21

    G.    Plaintiff's Class Allegations Should be Struck Under Rule 12(f) ..............21

IV. CONCLUSION................................................................................................23

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page i

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662, 678 (2009)...........................................................................9

*Bakhchinyan v. Countrywide Bank, N.A.*
  C13-2273-JCC, 2014 WL 1273810 (W.D. Wash. Mar. 27, 2014)................................21

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)............................................................................9

*Bhatti v. Guild Mortg. Co.*
  No. C11-0480JLR, 2011 WL 6300229 (W.D. Wash. Dec. 16, 2011)...........................21

*Bisson v. Bank of Am., N.A.*
  919 F. Supp. 2d 1130 (W.D. Wash. 2013)................................................21

*Brummet v. Wash.'s Lottery*
  171 Wn. App. 664, 288 P.3d 48 (2012)..................................................18

*Cagle v. Abacus Mortg., Inc.*
  No. 2:13-cv-02157-RSM, 2014 WL 4402136 (W.D. Wash. Sept. 5, 2014)...................21

*Comer v. Micor, Inc.*
  436 F.3d 1098 (9th Cir. 2006) ........................................................11

*Coto Settlement v. Eisenberg*
  593 F.3d 1031 (9th Cir. 2010) ........................................................10

*Cousins v. Lockyer*
  568 F.3d 1063 (9th Cir. 2009) .........................................................9

*Elliot Bay Seafoods, Inc. v. Port of Seattle*
  124 Wash. App. 5, 98 P.3d 491 (2004)..................................................10

*Fid. & Deposit Co. of Md. v. Dally*
  148 Wn. App. 739, 201 P.3d 1040 (2009)................................................13

*Gen. Tel. Co. of Sw. v. Falcon*
  457 U.S. 147 (1982)...................................................................22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*
  105 Wn.2d 778, 719 P.2d 531 (1986)................................................16, 17

*Hiner v. Bridgestone/Firestone, Inc.*
  91 Wn. App. 722, 959 P.2d 1158 (1998), *rev'd on other grounds*, 138 Wn.2d 248, 978
  P.2d 505 (1999)...................................................................17, 18

*In re Stat Elecs. Secs. Litig.*
  89 F. 3d 1399 (9th Cir. 1996) ........................................................16

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page ii

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*
  162 Wn.2d 59, 170 P.3d 10 (2007) ................................................................................20

*Kelley v. Hansen*
  251 F.R.D. 554 (2008) ...................................................................................................22

*Klem v. Washington Mut. Bank*
  176 Wn.2d 771, 295 P.3d 1179 (2013) ...............................................................17, 19, 20

*Lowden v. T-Mobile USA, Inc.*
  2009 WL 537787 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 Fed. Appx. 693 (9th Cir.
  2010) ........................................................................................................................19, 20

*Mellon v. Regl. Tr. Services Corp.*
  182 Wn. App. 476, 334 P.3d 1120 (2014) ......................................................................17

*Minnick v. Clearwire US, LLC*
  683 F. Supp. 2d 1179 (W.D. Wash. 2010).....................................................................20

*Muniz v. Microsoft Corp.*
  No. C10-0717-JCC, 2010 WL 4482107 (W.D. Wash. Oct. 29, 2010) ...........................10

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*
  78 Wn. App. 707, 899 P.2d 6 (1995) ..............................................................................10

*Panag v. Farmers Ins. Co. of Wash.*
  166 Wn.2d 27, 204 P.3d 885 (2009)...............................................................................17

*Robinson v. Avis Rent A Car Sys., Inc.*
  106 Wn. App. 104, 22 P.3d 818 (2001) ..........................................................................18

*Seattle Pump Co., Inc. v. Traders and General Ins. Co.*
  93 Wn. App. 743, 970 P.2d 361 (1999)..........................................................................16

*Semegen v. Weidner*
  780 F.2d 727 (9th Cir. 1985) ..........................................................................................17

*Smale v. Cellco P'ship*
  547 F. Supp. 2d 1181 (W.D. Wash. 2008).....................................................................18

*Steckman v. Hart Brewing, Inc.*
  143 F.3d 1293  (9th Cir. 1998) .......................................................................................10

*Stokes v. CitiMortgage, Inc.*
  No. 14-00278, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015)...........................................22

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) ..........................................................................................10

*Teamsters Local #427 v. Philco Ford Corp.*
  661 F. 2d 776 (9th Cir. 1981) .........................................................................................16

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page iii

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Tietsworth v. Sears*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...............................................................22

*Tritz v. U.S. Postal Serv.*
  721 F.3d 1133 (9th Cir. 2013) ............................................................................13

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ............................................................................16

**Statutes**

RCW ch. 19.86 (Washington Consumer Protection Act) .......................................... passim

**Rules**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................9

Fed. R. Civ. P. 9(b) ..........................................................................................9, 16

Fed. R. Civ. P. 12(b)(6) ..........................................................................1, 9, 21, 23

Fed. R. Civ. P. 12(f) ...............................................................................3, 21, 23

Fed. R. Civ. P. 15(a) ...........................................................................................21

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page iv

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# I. INTRODUCTION

Soulbound Studios, LLC ("SBS")[1] is a videogame studio that has been developing Chronicles of Elyria ("CoE")—an expansive, open world, role-playing game—since November of 2016.[2]  Am. Compl. ¶¶ 10, 16.  Plaintiff alleges that he was one of many to have purchased downloadable content (i.e., in-game items) from SBS during the development of CoE—items he eventually expected to use while playing the game.  *Id.* ¶¶ 17-22.  Because the game remains in development, *id.* at ¶ 16, and because he has not yet had an opportunity to use the in-game items he purchased, Plaintiff brings this action on behalf of himself and those he claims to be similarly situated, demanding that SBS refund the money he and others paid for downloadable content within CoE.

All of Plaintiff's claims turn upon the demonstrably incorrect premise that SBS has an obligation to refund downloadable content purchases.  As the documents referenced in the Amended Complaint make clear, precisely the opposite is true:  In SBS' Terms of Service (the "SBS Terms"), the parties expressly agreed SBS would ___not___ be obligated to refund ___any___ downloadable content purchases.[3]

Rather than acknowledging that fact, Plaintiff attempts to plead his way around it.  Plaintiff's allegations ignore the SBS Terms as a whole, and rely instead on isolated language that—when taken out of context and combined with the refund policy of CoE's publisher, non-party Xsolla—supposedly gives rise to an obligation, on the part of SBS, to refund downloadable content purchases.  For a number of reasons, Plaintiff's claims cannot survive a motion to dismiss under Rule 12(b)(6).

---

[1] This motion is filed on behalf of Soulbound Studios, LLC only. As previously noted, *see* Dkt. # 17 at 2 n.1, the entity referred to as "Soulbound Studios (USA)" appears to be named in error.

[2] The facts herein are taken from the Amended Complaint unless otherwise specified, and all exhibits cited are attached to the Declaration of Anna F. Cavnar.

[3] The operative SBS Terms are attached herein as **Exhibit A**, and were originally submitted as Exhibit F to the Declaration of Jeromy Walsh in Support of Defendant SBS's Motion to Dismiss the Complaint (Dkt. # 17).  For ease of reference, that declaration and its accompanying exhibits are attached *in globo* as **Exhibit B**.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 1

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*First*, Plaintiff agreed SBS has no obligation to issue refunds.  In fact, the SBS Terms unequivocally state, in multiple places, that purchases of Services[4] from SBS are *non-refundable*.  Indeed, Plaintiff's selective citation to a single sentence from the SBS Terms fails to plausibly allege a claim for breach when the sentences directly after it explicitly state that "*you agree any amounts raised shall be non-refundable regardless of whether or not [SBS] actually delivers the Services*" and "*you shall irrevocable [sic] wave any claim for refund*" from SBS.  Moreover, Plaintiff's attempt to incorporate Xsolla's refund policy into the SBS Terms is flatly contradicted by the language of those agreements, along with a provision in the SBS Terms that expressly disclaims liability under the terms of use of any third-party.  In short, Plaintiff's claim for a refund, if any, lies with Xsolla—not SBS—and those claims have properly been compelled to (and currently are proceeding in) arbitration.  Dkt. # 35.

*Second*, Plaintiff has not stated a plausible claim against SBS under the Washington Consumer Protection Act ("CPA").  For one, Plaintiff alleges SBS misrepresented information about CoE in an unidentified video it supposedly released about the game in 2017, but falls woefully short of the heightened pleading requirements that apply to any such allegations.  Even when Plaintiff's vague and conclusory allegations are taken at face value, the Amended Complaint still fails to allege the essential elements of an unfair or deceptive act, causation, or injury, as the CPA requires.

*Third*, as a matter of Washington law, Plaintiff cannot sustain an equitable claim for unjust enrichment because he has sued SBS for supposedly breaching the SBS Terms, which Plaintiff concedes are a valid and enforceable written agreement that covers the subject matter of this dispute.

---

[4] "Services" are defined under the Terms as "any website, game play, server use, computer program, third party service, software, widget, tool, or any other service provided by [SBS] for your use."  *See* Ex. A at 1, Section 2, Definitions.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

***Fourth***, Plaintiff's tag-along claim for declaratory relief is also barred under settled Washington law.

***Finally***, in addition to being dismissed for failure to state a claim, Plaintiff's class allegations also should be struck under Rule 12(f).  The putative class Plaintiff seeks to certify—namely, "all persons in the world" who purchased downloadable content for CoE and requested but did not receive a refund from SBS—is hopelessly overbroad and cannot be maintained.  Among other shortcomings, common issues of law do not predominate under a deception-based CPA claim, even if one had been plausibly alleged, and Plaintiff fails to allege the CPA has extraterritorial application to "all persons in the world," such as those putative class members who reside outside the United States.

## II. STATEMENT OF FACTS

### A.    Procedural History

On February 2, 2021, Plaintiff initiated this action by filing a complaint in the United States District Court for the Central District of California against SBS and its third-party publisher, Xsolla, alleging breach of contract and related claims against both entities under California law.  Dkt. # 1.  Xsolla filed a motion to compel arbitration under the End User License Agreement ("EULA")[5] it entered into with Plaintiff, Dkt. # 20, and the Hon. Stephen V. Wilson granted that motion.  Dkt. # 35.  As a result of that ruling, Plaintiff's claims against Xsolla are now pending in arbitration.  *Id.*

Separately, Judge Wilson also granted SBS's motion to transfer what remained of the case to the Western District of Washington.  Dkt. # 17, 35.  Plaintiff subsequently filed his Amended Complaint, dropped Xsolla as a defendant, and now asserts claims against only SBS for breach of contract, alleged violations of the CPA, unjust enrichment, and declaratory relief, all in an effort to recover from SBS the exact same refund he is

---

[5] The EULA is attached herein as **Exhibit C**, and was originally filed as Exhibit 1 to the Declaration of Dmitry Burkovskiy (Dkt. # 20-2).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

simultaneously seeking to recover (in arbitration) from Xsolla.

**B.    Contracts and Policies Governing Plaintiff's Purchases of CoE Content From SBS Through Payment Processor Xsolla**

Plaintiff's breach of contract claim against SBS hinges upon a single sentence plucked from Section 5 of the SBS Terms, read entirely out-of-context from the highly-relevant language surrounding it, and then combined with other carefully edited language taken from Xsolla's refund policy[6] (to which SBS is not a party).  Am. Compl. ¶¶ 18-20, 31-32.  From this, Plaintiff attempts to create a supposed legal obligation on the part of SBS to refund purchases of downloadable content. That characterization directly contradicts the plain language of the contracts in question and is implausible on its face.

Plaintiff acknowledges that the SBS Terms constitute a valid and enforceable contract between himself and SBS.  *See* Am. Compl. ¶¶ 18-20, 31-33; *see also* Ex. D at 2, ¶ 2.  And indeed, the SBS Terms expressly "govern use of and access to any page, site or content available" on the CoE website, and state at the outset that "WHEN YOU USE OUR WEBSITE OR OUR SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THOSE TERMS AND POLICIES."  Ex. A at 22.

However, and tellingly, Plaintiff chose to omit copies of the SBS Terms or Xsolla's refund policy from his Amended Complaint—documents that contain highly relevant language he conveniently omits from his pleadings.[7] Because Plaintiff selectively quotes and refers to those documents throughout the Amended Complaint,[8] they are

---

[6] Xsolla's refund policy is attached herein as **Exhibit D**, and was originally filed as Exhibit 1 to the Declaration of James Falls in support of Plaintiff's Opposition to Defendant Xsolla (USA), Inc.'s Motion to Compel Arbitration (Dkt. # 23-3).

[7] Paragraph 31 of the Amended Complaint references an "Exhibit 1," but no exhibit has been filed.

[8] Plaintiff does not specify when he purchased the downloadable content allegedly at issue. However, the Terms in effect during the period in which Falls registered with SBS and made a purchase on the CoE website are dated June 25, 2017; February 27, 2018; and May 25, 2018, respectively.  *See generally* Ex. B at 1-3, Declaration of Jeromy Walsh ¶¶ 2-11.  While the three versions of the Terms do not materially differ for purposes of Plaintiff's claims, the May 25, 2018 Terms contain the operative language as they

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

incorporated by reference and should be considered here.  Am. Compl. ¶¶ 18-20.  Even a cursory review of those documents reveals the Amended Complaint is built on a broken foundation.

Indeed, ignoring the vast majority of the terms to which he agreed, Plaintiff builds his entire case upon a single sentence taken from Section 5, stripped from context:

> Any portion of funds raised for the provision of the Services shall be non-refundable, unless such funds shall be deemed refundable under terms of services of the third-party service through which those funds for the provision of Services were procured and in effect at the time of provision of those funds.

Am. Compl. ¶ 18; Ex. A at 3.

Yet Section 5 of the Terms—which addresses "Kickstarter and Fundraising" relating to CoE—states in full as follows, with Plaintiff's selected sentence underlined:

> Any funds raised on a third party service (i.e. – Kickstarter, GoFundMe, etc.) shall be governed by the terms of the particular third party service. Any funds raised through such third party service, as well as any funds raised through pre-release sales of Services . . . is a deposit to be used for the production of and the delivery of the Services. . . .
>
> ***Any funds so raised shall be earned by [SBS] and are non-refundable***. Such funds shall be applied to the direct provision of any Purchase made and/or to the cost or provision of the Services. [SBS] shall use best efforts to deliver Services purchased-pre-release on or before the estimated release date for the Services. However you acknowledge and agree such delivery dates is not a firm promise and may be extended by [SBS]. <u>Any portion of the funds raised for the provision of the Services shall be non-refundable, unless such funds shall be deemed refundable under terms of services of the third-party service through which those funds for the provision of Services were procured and in effect at the time of the provision of those funds.</u>[9] In consideration of [SBS]'s use of best efforts to develop, produce, and deliver the Services utilizing, in part or in whole, the funds raised for the provision of Services, ***you agree any amounts raised shall be non-refundable regardless of whether or not [SBS] actually delivers the Services***. In consideration for the promises by [SBS],

---

"supersede and cancel previous contracts or agreements." *See* Ex. A at 8, Section 15.  The May 25 Terms are therefore cited throughout the motion.

[9] This is the only sentence that the Amended Complaint selectively cites from the Terms.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Cause No. 2:21-cv-00922-JCC-TLF) - Page 5

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

you agree ***you shall irrevocable [sic] waive any claim for refund*** of any such funds.

Ex. A at 3-4 (emphasis added). As shown above, Plaintiff's selective quotation from Section 5 simply ignores the remaining balance of that section, which plainly states that funds raised are non-refundable, and that any claim for a refund has been waived, regardless of delivery.

Building upon that incomplete and misleading foundation, Plaintiff goes on to cite the following language from non-party Xsolla's refund policy:

> The terms of this Refund policy govern the relationship between you (purchaser of the Software) and one of the companies of the Xsolla group (hereinafter 'Xsolla' or 'us' or 'we') regarding your purchase of the Software.
>
>      *      *      *      *
>
> We DO honor requests for the refund upon your request on the following reasons: . . . Pre-orders where no content has been delivered yet.

Am. Compl. ¶ 19; Ex. D at 5.

Relying upon these passages, stripped from their context, Plaintiff goes on to allege (upon information and belief) that **_SBS_** supposedly "is one of the companies of the Xsolla Group," and that "Xsolla's refund policy is recognized by SBS." *Id.* ¶ 20.[10] In short, Plaintiff alleges SBS is required to honor Xsolla's refund policy. But that conclusion—cobbled together from language taken out of context from two different agreements, entered between disparate parties, covering disparate subject matters, and involving disparate legal entities—is incorrect and implausible on its face.

---

[10] In support of this misguided allegation, Plaintiff points to the EULA he entered into with Xsolla, the game's publisher, at the time he purchased downloadable content for CoE. Am. Compl. ¶ 20. Plaintiff provides no plausible explanation (and, indeed, no explanation at all) as to why the EULA—through which Xsolla provided Plaintiff a license to use the downloadable content he had purchased within CoE—even remotely demonstrates that SBS "is one of the of the companies of the Xsolla Group." Am. Compl. ¶ 20. There is no evidence, or even a plausible allegation, supporting that proposition. To the contrary, SBS is neither a party to nor third-party beneficiary of the EULA, as the EULA itself explicitly states. *See* Ex. C at 4.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Furthermore, Plaintiff disregards the fact that the EULA—which incorporates Xsolla's refund policy—expressly states that it is "a binding legal agreement between [the user] and Xsolla," and that "[n]othing in [the EULA] shall be deemed to confer any third-party rights or benefits." Ex. C at 4.

Additionally, Plaintiff ignores the section of the SBS Terms regarding Third-Party Services—such as the third-party publication services provided by Xsolla. That section states that while SBS "makes no warranties or representations as to any such third-party services." It also states that SBS **"will be in no way responsible or in any way liable for Your use of such third-party services**. Such use of third party services shall be governed by the terms of service of the particular service, which may or may not differ from these Terms of Service." Ex. A at 4-5, Section 8 (emphasis added).

Finally, and perhaps most critically, Plaintiff also completely ignores Section 7 of the SBS Terms, which governs "Purchases and Refunds" relating to CoE and bluntly states as follows:

> You acknowledge and accept that all purchases of the Services, as well as any purchase of any Goods, Perks, and Attributes, are FINAL. You acknowledge and agree that any applicable fees and other charges, including those paid for licenses to the Services . . . are not refundable, in whole or in part. You acknowledge you will not be refunded, receive money, or otherwise be compensated or credited for unused . . . Services, when an account is closed, whether such closure is voluntary or involuntary.

Ex. A at 4, Section 7 (emphasis original).

### C.    Plaintiff's Allegations and Claims

Plaintiff alleges that CoE was under development since November 2016, Am. Compl. ¶ 12, that SBS raised certain funds through Kickstarter and online sales, *id.* ¶13-14, and that, in and around July 2017, SBS released a "detailed announcement which advised of SBS's timeline, its systems, and its progress regarding CoE development." *Id.* ¶ 15. Plaintiff alleges that SBS included with this July 2017 "update" a purported "video

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

with game play footage." *Id.* Plaintiff alleges that he "later found out the footage SBS offered as game play footage of CoE was actually cinematics." *Id.*

Plaintiff alleges that, "[g]enerally, when game play footage is shown it boosts the confidence of the community to further support the developer because it lets consumers know what the game currently looks like[,]" i.e., it is "actual game development to show its consumers development progress," whereas cinematics can be "made in a studio." *Id.* ¶ 15. Plaintiff additionally alleges that SBS "had announced the launch date of CoE *could be* within a window of time from July 2019 to December 2019" and "still has not come to fruition." *Id.* ¶ 16 (emphasis added). Plaintiff does not specify when he purchased the downloadable content at issue or the circumstances under which he purportedly requested a refund, including when, why, or from whom he requested a refund, nor does Plaintiff specify whether he purported to rely upon the allegedly false representations referenced in his Amended Complaint.

Despite the plain and unequivocal language in the SBS Terms that users have no right to a refund from SBS, Plaintiff now seeks a refund from SBS through four separate causes of action: (1) breach of contract, *id.* ¶¶ 30-34; (2) violation of the CPA (RCW ch. 19.86), *id.* ¶¶ 35-37; (3) unjust enrichment, *id.* ¶¶ 38-40; and (4) declaratory relief, *id.* ¶¶ 41-43.[11] He asserts these claims on behalf of himself and a putative class comprised of "[a]ll persons in the world" who "purchased downloadable content for CoE from SBS within the last four years," "requested a refund where no game content has been delivered, and where SBS "did not provide a refund." *Id.* ¶¶ 23-29.

---

[11] As noted, Plaintiff is simultaneously pursuing the exact same refund from Xsolla through a separate arbitration.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## III. AUTHORITY AND ARGUMENT

**A.    Legal Standard on Rule 12(b)(6) Motion to Dismiss**

A complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see* Fed. R. Civ. P. 8(a)(2). Where, as here, a party predicates claims upon allegations of fraud or misrepresentation, such allegations must be pled with particularity.  Fed. R. Civ. P. 9(b).

Defendants may move the court to dismiss the complaint if that complaint "fails to state a claim upon which relief may be granted." *See* Fed. R. Civ. P. 12(b)(6).  Upon a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks omitted).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted throughout).  A claim has "facial plausibility" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 9

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

On a 12(b)(6) motion, the Court may consider documents referenced in the complaint under the incorporation-by-reference doctrine. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This "prevent[s] plaintiffs from surviving a 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (alterations omitted). The Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Here, Plaintiff's Amended Complaint specifically references, selectively quotes, and purports to rely upon provisions of the SBS Terms, Xsolla's refund policy, and the EULA between Xsolla and Plaintiff. *See* Am. Compl. ¶¶ 18-20. Although Plaintiff does not provide the Court with any of these cited documents, they are incorporated by reference into the Amended Complaint, are attached as exhibits herein, and are properly before the Court for purposes of this motion.

**B.    Plaintiff's Breach of Contract Claim Against SBS Fails as a Matter of Law**

Under Washington law,[12] an alleged "breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). A plaintiff cannot allege a breach of contract without identifying a specific contractual duty the defendant breached. *See, e.g.*, *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 124 Wash. App. 5, 98 P.3d 491, 494 (2004). Put differently, "a contract cannot be breached if [it] does not include the term in question." *Muniz v. Microsoft Corp.*, No. C10-0717-JCC, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010).

Here, Plaintiff predicates his breach of contract claim upon a single sentence selectively plucked from Section 5 of the SBS Terms, which concerns "Kickstarter and

---

[12] The Terms provide that Washington law governs the agreement. *See* Ex. A at 8, Section 14, Applicable Law, Jurisdiction, and Venue.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Fundraising," while categorically ignoring Section 7 of the SBS Terms, which sets forth the SBS refund policy for downloadable content. Am. Compl. ¶ 18; Ex. A at 3-4, 8.

Stripped of its context, the single sentence quoted by Plaintiff states that "[a]ny portion of funds raised for the provision of the Services shall be non-refundable, unless such funds shall be deemed refundable under terms of services of the third-party service . . . ." *Id.* ¶ 18. Read in combination with another cherry-picked excerpt from Xsolla's refund policy, *see id.* ¶ 19,[13] Plaintiff alleges he and those similarly situated "entered into a written contract (with implied provisions) with SBS," the terms of which were "that SBS would refund Plaintiff and the putative class's money for downloadable content, upon request, where no game content had been delivered." *Id.* ¶ 31. But Plaintiff cannot point to any agreement containing any such term, and the agreements referenced throughout the Amended Complaint stand for precisely the opposite proposition. Because he has not and cannot establish that SBS had any contractual duty to provide a refund, Plaintiff's claim for breach of contract should be dismissed.

As an initial matter, Plaintiff's own allegations confirm that he "and those similarly situated, entered into a written contract" with SBS. Am. Compl. ¶ 31. Plaintiff admits he "was required to check [a checkbox] to agree to" the SBS Terms during registration with SBS before purchasing his downloadable content. *Id.* ¶ 18. In so doing, Plaintiff acknowledged that he "READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THOSE TERMS AND POLICIES." Ex. A at 1. Further, because Plaintiff sues SBS for allegedly breaching the SBS Terms, he is equitably estopped from claiming the SBS Terms do not govern his relationship with SBS. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel 'precludes a party from claiming the

---

[13] Plaintiff's selected portion of the Xsolla refund policy states: "The terms of this Refund policy govern the relationship between you (purchaser of the Software) and one of the companies of the Xsolla group (hereinafter "Xsolla" or "us" or "we") regarding your purchase of the Software." [. . . ] "We DO honor requests for the refund upon your request on the following reasons . . . Pre-orders where no content has been delivered yet." Am. Compl. ¶ 19.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 11

benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" (quotation omitted)); *see also* Dkt. # 35 (Order) at 3 (explaining equitable estoppel in context of EULA and enforcing arbitration clause as to claims against Xsolla).

Plaintiff fails to establish SBS had a contractual duty to provide refunds to Plaintiff for at least four reasons. *First*, the quoted sentence from Section 5 of the SBS Terms does not apply to Plaintiff's alleged purchases of "downloadable content for CoE." Am. Compl. ¶ 17. Although the Amended Complaint broadly alleges SBS raised money through both Kickstarter fundraising and "sales via SBS's online store," Plaintiff specifies that the "'sales' referenced [in the Amended Complaint] mean items were purchased from SBS through Xsolla." *Id.* ¶¶ 13-14.

Stated differently, Plaintiff admits his refund claims pertain only to "sales," not a Kickstarter contribution, as he purportedly requested a refund for "downloadable content" he claims to have purchased through Xsolla. *Id.* ¶¶ 17-21. But Section 5 of the SBS Terms—on which Plaintiff predicates his entire case—does not apply to such purchases, as that section clearly pertains only to "funds raised on a third-party service (i.e. – Kickstarter, GoFundMe, etc.)." Ex. A at 3.

Instead, the purchases Plaintiff made via SBS's online store are governed by Section 7 of the SBS Terms, which addresses "Purchases and Refunds" relating to CoE. Ex. A at 4. That Section unequivocally states that "all purchases of the Services, as well as any purchase of any Goods, Perks, and Attributes, are FINAL." *Id.* It further states that "any applicable fees and other charges including those paid for licenses to the Services or any Goods, Perks, and Attributes . . . are ***not refundable***, in whole or in part." *Id.* (emphasis added). This language forecloses Plaintiff's claim for a refund against SBS, which is why Plaintiff studiously avoids mentioning it.

*Second*, even if the quoted sentence from Section 5 of the SBS Terms did apply to Plaintiff's purchase of downloadable content—it does not—Plaintiff simply ignores the

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 12

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

surrounding sentences in that paragraph, which (like Section 7) explicitly affirm SBS is *not* responsible for refunds, and that Plaintiff has irrevocably waived his right to such a refund from SBS.  Those sentences state:

> Any funds so raised shall be earned by SBS and ***are non-refundable***[,]" and "[i]n consideration of SBS's use of best efforts . . . you agree any amounts raised ***shall be non-refundable regardless of whether or not SBS actually delivers the Services***.  In consideration of the promises by SBS, you agree ***you shall irrevocable [sic] waive any claim for refund*** of any such funds.

Ex. A at 4 (emphasis added).  This plain language flatly contradicts the assertion that Plaintiff can somehow bootstrap SBS into providing a refund under the terms of Xsolla's refund policy.  There is no basis in law, logic, or the parties' agreements for such an outcome.

Indeed, the foregoing language is a dead end for Plaintiff's breach of contract claim: When a plaintiff alleges a contract promises one thing, yet the contract says something different, courts disregard the plaintiff's allegations in favor of the actual contract language.  *See, e.g.*, *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1139-40 (9th Cir. 2013) (dismissing contract claims where parties' agreement contradicted allegations in complaint); *Fid. & Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745-46, 201 P.3d 1040 (2009) (granting summary judgment dismissal where contract imposed no duty).  Simply put, Plaintiff cannot identify any duty relating to refunds under the Terms.

*Third*, Plaintiff also ignores Section 8 of the SBS Terms, which addresses the relationship between SBS and third-parties, such as Xsolla, who may provide services in connection with CoE.  That section expressly disclaims liability for the actions of such third parties, while recognizing their terms may differ from the SBS Terms.  It states, in pertinent part, that (1) "[SBS] makes no warranties or representations as to any such third-party services, and [SBS] will in no way be responsible or in any way liable for Your use of such third-party services"; and (2) "[s]uch use of third party services shall be governed

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 13

by the terms of service of the particular service, which may or may not differ from these Terms of Service." Ex. A at 4, Section 8.  In other words, the possibility of a refund from a third party—which SBS acknowledges could exist under a third party's separate terms of service—is separate and apart from SBS's obligations to users under the SBS Terms, which expressly do ***not*** include refunds.  There is no way around this plain language.

*Fourth*, Plaintiff's theory fundamentally misconstrues the Xsolla refund policy, which it claims (without any exposition whatsoever) somehow applies to SBS by virtue of the EULA Plaintiff entered into with Xsolla – an agreement to which SBS is not a party. Am. Compl. ¶ 20.  As an initial matter, there is nothing in the EULA, nor in law or logic, that confers rights or obligations upon Plaintiff vis-à-vis SBS.  Rather, the EULA expressly states that it is "a binding legal agreement between [the user] and Xsolla," and that "[n]othing in [the EULA] shall be deemed to confer any third-party rights or benefits." Ex. C at 4.

Simply ignoring this language, Plaintiff points to the EULA (again, without any exposition) as evidence that SBS supposedly is "one of the companies of the Xsolla group," and then, on the basis of that untenable allegation, attempts to bootstrap SBS into Xsolla's refund policy.  Am. Compl. ¶ 19.  In other words, Plaintiff contends, without any support whatsoever, that the terms "Xsolla" or "we," as used in Xsolla's refund policy, should be read to include SBS.

This interpretation completely misses the mark.  For one, it ignores contrary language from Xsolla's refund policy that plainly states the customer's "chosen method of payment" determines

> [w]hich company of the Xsolla group of companies is a party to this Refund policy, concluded with a specific user . . . .  The name and legal address of the company from Xsolla which is a party to the Refund policy is shown on the checkout page after you choose a payment method. In addition, the name and address of the relevant company will be indicated in the receipt provided to the user after payment of the purchase.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 14

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*See* Ex. D at 5. Plaintiff does not allege (nor can he allege) that SBS—the video game studio—appeared on the checkout page or on any receipt provided by the third-party publisher in connection with his purchases.

Further, Plaintiff's erroneous interpretation also ignores language in the EULA that the agreement is "between you [i.e., Plaintiff] and Xsolla" and that clearly differentiates between Xsolla and the "Software developer" (i.e., SBS) in multiple places throughout.[14] *See* Ex. C at 4. Additionally, Plaintiff's misguided interpretation flatly contradicts the language in the SBS Terms that expressly disclaims any liability under the terms of use of third parties, while acknowledging such terms may apply to transactions and differ from the SBS Terms.

Moreover, were Plaintiff's allegation that SBS is one of the companies of the Xsolla Group true (it is not), then any claims against SBS must be pursued in arbitration along with Plaintiff's claims against Xsolla, for all of the same reasons Judge Wilson previously explained at length in the Order granting Xsolla's motion to compel arbitration. *See* Dkt. # 35 (Order). In short, Plaintiff's theory that SBS is liable to refund purchases made through Xsolla—a theory predicated upon the misguided assertion that "Xsolla's refund policy is," somehow, "recognized by SBS," Am. Compl. ¶ 20—is a house of cards that collapses under its own weight. For all of these reasons, Plaintiff's breach of contract claim against SBS should be dismissed as a matter of law.

**C.      Plaintiff Fails to State a Claim Under the Consumer Protection Act**

Plaintiff's second cause of action under the CPA fares no better. Plaintiff pleads that claim in formulaic fashion, *see* Am. Compl. ¶¶ 35-37, and fails to plausibly establish a claim for which relief may be granted.

---

[14] Under "Grant of License" section, the EULA defines "Software" as "the software, applications, content, games, or other digital materials, which Xsolla has been authorized by the respective Software developer or publisher to offer Users for purchase." Ex. C at 4, Section 2.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 15

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

The CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To prove a violation, Plaintiff must establish five elements: (1) an unfair or deceptive act; (2) the act occurred in the conduct of trade or commerce; (3) the act has an impact on the public interest; (4) injury to the claimant; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 790, 719 P.2d 531 (1986). The question of whether a particular action gives rise to a CPA violation is a question of law. *Seattle Pump Co., Inc. v. Traders and General Ins. Co.,* 93 Wn. App. 743, 752, 970 P.2d 361 (1999).

***Rule 9(b) Applies***. As an initial matter, because Plaintiff's CPA claim rests upon purported misrepresentations, it sounds in fraud and must therefore meet the heightened pleading standard under Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Rule 9(b) requires Plaintiff to state the "time, place and *specific content* of the false representations as well as the identities of the parties to the misrepresentation." *Teamsters Local #427 v. Philco Ford Corp.*, 661 F. 2d 776, 782 (9th Cir. 1981) (emphasis added). Here, Plaintiff vaguely alleges that a video—the length and substance of which he does describe—was purportedly "showcased" (where and how he does not say) as part of a "detailed announcement" in or around July 2017. *Id.* ¶ 15.

Plaintiff alleges that this unspecified video purportedly contained "cinematics" instead of game play footage, without a "disclaimer which stated that what was being shown was not actual game play footage." Am. Compl. ¶ 15. But without any description of its substantive content or length, Plaintiff's reference to an unspecified video, purportedly posted amidst the release of other content, is too nebulous to sufficiently identify the purported misrepresentation at issue. *See, e.g.*, *In re Stat Elecs. Secs. Litig.*, 89 F. 3d 1399 (9th Cir. 1996) (broad assertions of time and place insufficient to fulfill the heightened pleading standard).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 16

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

These allegations simply do not give SBS "notice of the particular misconduct which is alleged to constitute the fraud." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Because Plaintiff has not identified the circumstances of purported fraud with sufficient particularity to satisfy the requirements of Rule 9(b), the CPA claim should be dismissed.

*Failure to Allege Unfair or Deceptive Act or Practice*. Even accepting all of Plaintiff's cursory allegations as true, and even setting aside Plaintiff's failure to comply with Rule 9(b), Plaintiff still cannot satisfy the first prong of the CPA because he has not alleged that SBS engaged in a deceptive or unfair act or practice as a matter of law. And, because Plaintiff does not allege any statutory violations that would constitute per se unfair or deceptive conduct, *Hangman Ridge*, 105 Wn.2d at 786, he must allege facts sufficient to establish the conduct is unfair or deceptive "under a case-specific analysis of those terms." *Mellon v. Regl. Tr. Services Corp.*, 182 Wn. App. 476, 489, 334 P.3d 1120 (2014). The Amended Complaint fails to meet that standard.

Indeed, although the CPA does not define the term "deceptive," implicit in that term is "the understanding that the actor *misrepresented* something of material importance." *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), *rev'd on other grounds*, 138 Wn.2d 248, 978 P.2d 505 (1999). To prove that a practice is deceptive, the question is whether the conduct has the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785–86. An act is deceptive if it involves "a representation, omission or practice that is likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50, 204 P.3d 885, 895 (2009) (quotation omitted).

Separately, "an act or practice can be unfair without being deceptive." *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). "[A] 'practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 17

reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers].'" *Id.* (alteration in original) (quoting 15 U.S.C. § 45(n)).

Here, Plaintiff's vague allegation that SBS included an unspecified video purportedly containing cinematics, rather than gameplay, is insufficient to establish a deceptive act under the CPA. Am. Compl. ¶ 15. Indeed, although Plaintiff alleges that "[g]enerally, when game play footage is shown it boosts the confidence of the community to further support the developer because it lets consumers know what the game currently looks like[,]" *id.* ¶ 15, he tellingly does ***not*** allege this particular video led him (or anyone) to purchase downloadable content for CoE, nor does he allege that viewing the video had anything to do with his (or anyone's) request for a refund.

Plaintiff thus fails to allege that any supposed misrepresentation communicated through the video—amidst the other information he claims was contained in the July 2017 "detailed announcement," *see* Am. Compl. ¶ 15—was "something of material importance." *Hiner*, 91 Wn. App. at 730; *see also Brummet v. Wash.'s Lottery*, 171 Wn. App. 664, 678, 288 P.3d 48 (2012) (affirming dismissal of CPA claim where advertising agency's statements that tickets were "going fast" not of material importance).

What's more, the SBS Terms clearly state that SBS's Services "may differ in certain aspects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds." Ex. A, Section 5. In other words, SBS disclosed that the CoE game, if and when it came to fruition, could be different from the information SBS shared about the game during its development. Under these circumstances, Plaintiff has not plausibly pled a deception-based CPA claim. *See, e.g.*, *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 119, 22 P.3d 818 (2001) (no "unfair or deceptive act . . . because the car rental companies disclosed the concession fee to the consumers"); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1186, 1188-89 (W.D. Wash. 2008) (dismissing CPA claim because "any reasonable consumer reading the Agreement would realize that

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 18

Verizon reserved the right to assess surcharges"); *Lowden v. T-Mobile USA, Inc.*, 2009 WL 537787, at *3 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 Fed. Appx. 693 (9th Cir. 2010) (dismissing CPA claim because plaintiff's "contract sufficiently disclosed" and permitted alleged deceptive practices).

Nor can Plaintiff establish that SBS's conduct was "unfair" under the CPA.  An act is unfair under the CPA if it (1) causes or is likely to cause substantial injury, which (2) consumers cannot avoid, and (3) is not 'outweighed by countervailing benefits.'"  *Klem*, 295, P.3d at 1187.  Here, the allegedly misleading video is not likely to cause injury when Plaintiff admits to knowing and understanding SBS was continuing to develop CoE, and that there was never any guaranteed release date.  *See* Am. Compl. ¶ 16 ("SBS announced the launch date of CoE *could be* within a window of time from July 2019 to December 2019.") (emphasis added).

Further, the SBS Terms expressly state that all purchases are "FINAL," "not refundable, in whole or part," and that users "will not be refunded, receive money or otherwise be compensated or credited for unused [items or Services] when an account is closed, whether such closure is voluntary or involuntary."  Ex. A, Section 7.  In agreeing to the SBS Terms, Plaintiff also acknowledged that while SBS would "use best efforts to deliver Services purchased-pre-release on or before the estimated release date for the Services," he "agree[d] such delivery dates [are] not a firm promise and may be extended by [SBS]," and that "any amounts raised shall be non-refundable regardless of whether or not [SBS] actually delivers the Services."

The Terms also disclose that Services would be made available "on an 'AS IS' and 'AS AVAILABLE' BASIS," and that users "EXPRESSLY AGREE THAT YOUR USE OF THIS SITE IS AT YOUR OWN RISK."  Ex. A at 8, Section 13.  Thus, the very type of risk Plaintiff complains of here—i.e., the risk that release of the game might be temporarily or indefinitely delayed, or that the release might not happen at all—was fully

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 19

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

disclosed and "reasonably avoidable" to any consumers who did not wish to bear that risk. *Klem*, 295 P.3d 1179.

In short, Plaintiff's vague allegation that SBS posted an unspecified video featuring "cinematics," without additional details, is not sufficient to plausibly establish deceptive or unfair conduct under the CPA.

***Failure to Allege Causation and Injury***. Plaintiff also fails to plausibly allege that the purported "unfair or deceptive act"—i.e., the posting of a purported "cinematics" video, *see* Am. Compl. ¶ 15—caused the injury about which he complains, namely that SBS has not honored his request for a refund. *Id.* ¶ 21. Plaintiff must establish that, "but for" the alleged unfair or deceptive practice, he "would not have suffered [this] injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007). This is a gaping hole in the Amended Complaint: Plaintiff does not allege that he purchased the downloadable content from SBS because of the purportedly misleading video, nor does he contend that SBS misled him regarding its policy regarding refunds. Failure to allege this element alone is fatal to Plaintiff's CPA claim.

**D.    Plaintiff's Unjust Enrichment Claim Fails Because a Contract Indisputably Governs the Relationship Between Plaintiff and SBS**

Plaintiff's third cause of action for unjust enrichment also fails as a matter of law. *See* Am. Compl. ¶¶ 38-40. "[A] plaintiff who is a party to a valid express contract is bound by the provisions of that contract and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter." *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (internal quotation omitted); *see also, e.g.*, *Lowden*, 2009 WL 537787, at *3 (citing cases). Because Plaintiff's own allegations affirm that the SBS Terms govern this dispute, *see* Am. Compl. ¶¶ 18-20, 31-33, Plaintiff cannot seek remedies outside of them. Plaintiff's unjust enrichment claim should be dismissed.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 20

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**E.      Plaintiff's Claim for Declaratory Relief Fails**

Through his fourth cause of action, Plaintiff seeks a declaratory judgment that "defines the respective rights and duties of Plaintiff and the putative class, on the one hand, and Defendant on the other," in connection with the dispute "as to their obligations under the refund policy contract." Am. Compl. ¶¶ 41-43. But declaratory relief is "only a remedy, not a cause of action." *Bakhchinyan v. Countrywide Bank, N.A.*, C13-2273-JCC, 2014 WL 1273810, at *7 (W.D. Wash. Mar. 27, 2014) (citing *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013)). And Plaintiff has not shown, as he must, that "there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Bisson*, 919 F. Supp. 2d at 1139. Rather, the relief he seeks is completely duplicative of the underlying contractual claim, which fails as a matter of law for the reasons explained above. *See supra* Part III.B. This tag-along claim should be dismissed.

**F.      Plaintiff's Claims Should be Dismissed with Prejudice**

In granting a Rule 12(b)(6) motion, the Court should freely allow leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). However, "[l]eave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile." *Cagle v. Abacus Mortg., Inc.*, No. 2:13-cv-02157-RSM, 2014 WL 4402136, at *2 (W.D. Wash. Sept. 5, 2014). Here, the Court should dismiss Plaintiff's claims with prejudice because, as shown above, they are premised on a clear misreading of the pertinent contracts and faulty legal theories, and therefore cannot be saved by additional pleading. *See Bhatti v. Guild Mortg. Co.*, No. C11-0480JLR, 2011 WL 6300229, at *3 (W.D. Wash. Dec. 16, 2011).

**G.      Plaintiff's Class Allegations Should be Struck Under Rule 12(f)**

Rule 12(f) allows a court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

may properly strike class allegations on a pre-answer motion to strike where a complaint demonstrates that a class action cannot be maintained on the facts alleged. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the [putative class members] are fairly encompassed within the named plaintiff's claim . . . ."); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."); *Stokes v. CitiMortgage, Inc.*, No. 14-00278, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("It is thus appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available.").

Here, it is proper to strike class allegations because the proposed class is overly broad and cannot be maintained on the face of the Amended Complaint. Among other things, common issues of law—alleged to include "[w]hether SBS's conduct as alleged herein violated [the CPA]," *see* Am. Compl. ¶ 26(b)—do not predominate. As explained in *Kelley v. Hansen*, deception-based theories of consumer fraud are typically unsuitable for class resolution due to the inherently individualized nature of the inquiry surrounding causation that is "fatal to predominance." *Hansen*, 251 F.R.D. 554, 557-58 (2008) (Pechman, J.) (citing multiple cases). Further, Plaintiff's definition of the putative class includes "[a]ll persons in the world" who purchased downloadable content from SBS and have not received a refund from SBS, yet Plaintiff has not sufficiently alleged that the CPA applies extraterritorially to "[a]ll persons in the world," including persons living outside the United States. Plaintiff's class allegations should be struck.

//

//

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 22

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## IV. CONCLUSION

The allegations in Plaintiff's Amended Complaint fail to establish plausible claims against SBS as a matter of law, even assuming their truth. SBS respectfully requests that this Court dismiss Plaintiff's claims, on behalf of himself and the putative class, with prejudice under Rule 12(b)(6), and strike Plaintiff's class allegations, to the extent any remain, under Rule 12(f).

DATED this 22 day of April, 2022.

McNAUL EBEL NAWROT & HELGREN PLLC

By: *s/ Anna F. Cavnar*
　　Timothy B. Fitzgerald, WSBA No. 45103
　　Anna F. Cavnar, WSBA No. 54413
　　600 University Street, Suite 2700
　　Seattle, WA 98101
　　Telephone: (206) 467-1816
　　Facsimile:  (206) 624-5128
　　Email:  tfitzgerald@mcnaul.com
　　　　　acavnar@mcnaul.com

*Attorneys for Defendant Soulbound Studios, LLC*

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
(Cause No. 2:21-cv-00922-JCC-TLF) - Page 23