1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES FALLS,

                     Plaintiff,

          v.

SOULBOUND STUDIOS LLC,

                     Defendants.

Case No. C21-922 JCC-TLF

REPORT AND
RECOMMENDATION

Noted for August 19, 2022

This matter comes before the Court on Defendant Soul Bound Studios LLC's ("SBS") motion to dismiss Plaintiff James Falls' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 54. SBS also seeks to strike Plaintiff's class allegations. Plaintiff responded to SBS's motion (Dkt. 56), and the Court held oral argument on June 29, 2022 (Dkt. 59).

For the reasons set forth below, the Court should GRANT SBS's motion to dismiss plaintiff's amended complaint and this case should be DISMISSED with prejudice.

Plaintiff originally brought this action in the United States District Court for the Central District of California against SBS and Xsolla, Inc. ("Xsolla"). Xsolla moved to compel arbitration pursuant to the arbitration provision of Xsolla's End User License Agreement. Dkt. 20. Xsolla's motion was granted. Dkt. 35. As a result of that ruling,

1    Plaintiff's claims against Xsolla are subject to arbitration.[1] Xsolla, therefore, is not a

2    named defendant in Plaintiff's amended complaint in this Court (Dkt. 53).

3        Plaintiff's amended complaint, i.e., the remainder of the case, is in this Court after

4    a favorable ruling on SBS's motion to transfer. Dkt. 35. Plaintiff's amended complaint

5    asserts diversity jurisdiction. Dkt. 53 at 2. Plaintiff brings causes of action on his behalf

6    and as to the purported class: breach of contract based on SBS's alleged failure to

7    follow through on its refund policy; that SBS violated Washington's Consumer

8    Protection Act, RCW 19.86.010 *et. seq.*; unjust enrichment; and declaratory judgment.

9                              <u>RELEVANT FACTS</u>

10       The following facts are alleged in the amended complaint (Dkt. 53) and are

11   assumed to be true only for the purposes of reviewing this motion. *Cedar Point Nursery*

12   *v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019).

13       Plaintiff purchased, on pre-order, approximately $20,000 in downloadable

14   content for Chronicles of Elyria ("CoE"), a video game that was being developed by

15   SBS. Dkt. 53 ¶¶ 10, 11, 12, 17, 18; Dkt. 53-1. SBS raised $1,361,435 from Kickstarter

16   and $6,638,565 in sales via SBS's online store for CoE. *Id*. at ¶13.

17       When Plaintiff went onto CoE's website (run by SBS) to purchase his

18   downloadable content, he was required to register for an account with CoE. *Id*. at ¶18.

19   This registration entailed agreeing to SBS's Terms of Use. The SBS's Terms of Use

20   stated:

21           Section 5. Any portion of funds raised for the provision of the Services
             shall be non-refundable, unless such funds shall be deemed refundable
22

23   [1] This Court takes judicial notice of Judge Stephen Wilson's opinion (Dkt. 35). *See Trigueros v. Adams*,
     658 F.3d 983, 987 (9th Cir. 2011) (the Court "may take judicial notice of proceedings in other courts, both
24   within and without the federal judicia system, if those proceedings have a direct relation to matters at
     issue.")

25

under terms of services of the third-party service through which those funds for the provision of Services were procured and in effect at the time of provision of those funds.

*Id*. at ¶18.

The CoE website then directed Plaintiff to Xsolla's website to process payment of the downloadable content. Xsolla was the payment processor; when plaintiff purchased the pre-ordered video game content, payments were processed by Xsolla. *Id*. at ¶11. Xsolla's website had a separate document describing the terms of use, which stated in relevant part: "We DO honor requests for the refund upon your request on the following reasons: . . . Pre-orders where no content has been delivered yet." *Id*. at ¶20.

Further, in July 2017, SBS released an announcement which advised of SBS's timeline and progress regarding CoE's development. *Id*. at ¶15. Within this update, SBS showcased video with gameplay footage. This footage was not actual gameplay; rather, it was cinematics. *Id*. To date, development of CoE has not been completed. *Id*. at ¶16.

Because the plaintiff did not receive game content, plaintiff requested a refund from SBS; yet no refund was given. Plaintiff brings this action on behalf of himself and others who purchased downloadable content for CoE from SBS within the last four years, requested a refund where no game content had been delivered, and were not given a refund by SBS. Plaintiff's claims include: breach of contract, violation of Washington's Consumer Protection Act, unjust enrichment and declaratory relief.

<u>DISCUSSION</u>

**A. Standard of Review**

When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true "all well-pleaded allegations of fact in the complaint and construe them in

the light most favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. The court may only consider the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530.

Under the Erie Doctrine, a federal court considering a diversity jurisdiction case will apply federal procedural law, and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

**B. Breach of Contract**

SBS argues that nothing in its Terms of Use states that *SBS* would provide refunds for whatever purchases may be "deemed refundable" by third-party service providers. SBS argues that if plaintiff seeks a refund from Xsolla, a third-party service provider, then plaintiff must request that refund directly from Xsolla. Plaintiff argues that the language in Section 5 of SBS's Terms of Use requires SBS to look to Xsolla's refund policy to determine his rights. And under Xsolla's refund policy, plaintiff would be entitled to a refund, which SBS is responsible for providing.

Contract interpretation is generally a question of law for the Court. *See, Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990). Washington courts give a "term [within a contract] its plain, ordinary, and popular meaning." *McLaughlin v. Travelers Commercial Ins. Co.*, 196 Wn.2d 631, 648 (2020) (internal quotation omitted). The Court cannot consider words and phrases in isolation, the Court must consider the contract in its entirety giving effect to each provision. *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271 (2011).

Under Washington law, the Court must use the "context rule" when interpreting contracts. *Berg*, 115 Wn.2d at 667-670. The context rule allows the court to consider extrinsic evidence as an aid to ascertaining the parties' intent and meaning of contract language, regardless of whether the contract language is ambiguous. *Id*. This rule allows the court to consider extrinsic evidence of the entire circumstances under which a contract was made. *Id*.

The purpose of this rule is to help understand the meaning of specific words and terms in the contract, "not to show an intention independent of the instrument or to vary, contradict or modify the written word." *Hearst Commc'ns, Inc. v. Seattle Times*, 154 Wn.2d 493, 503 (2005) (internal quotations omitted). Ultimately, the parties' intent must be determined based on the objective manifestations of the written agreement itself, not the unexpressed subjective intent of the parties. *Condon v. Condon*, 177 Wn.2d 150, 162 (2013).

When interpreting contracts, "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Hearst Commc'ns, Inc.*, 154 Wn.2d 503-04. The Court's duty is "to declare the meaning of what

is written, and not what was intended to be written." *Condon*, 177 Wn.2d at 162 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349 (1944)).

If the language of a contract is clear and unambiguous, the Court "may not modify the contract or create ambiguity where none exists." *McLaughlin v. Travelers Commercial Ins. Co.*, 196 Wn.2d 631, 649 (2020) (internal citations omitted). A term is ambiguous if it is susceptible to more than one reasonable interpretation. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756 (2010). When contract language is ambiguous, the goal of contract interpretation is to determine the intent of the parties. *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 467 (1985). Ambiguous terms are strictly construed against the drafter. *Id*.

i.      Incorporation by Reference

The first question before the Court is whether the Court can consider the terms of both contracts in light of the fact that Plaintiff attached neither the Xsolla nor SBS terms of use to his amended complaint.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v.*

*Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Here, Plaintiff did not attach the SBS or Xsolla contract to the amended complaint. However, because plaintiff refers to both contracts in the amended complaint and both documents form the basis of his claims against SBS, the Court will treat them as part of the amended complaint for purposes of this motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

The next step in the analysis is for the Court to determine whether, under Washington law, the Court should interpret only the SBS contract, or also interpret the terms of the Xsolla contract and its connection to the SBS contract.

In Washington, where the "parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wash.2d 781, 802 (2009). It must be clear that the parties had knowledge of and assented to the incorporated terms. *See W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn.App. 488, 495 (2000).

In this case, the SBS contract states, "any portion of the funds raised for the provision of the Services shall be non-refundable, unless such funds shall be deemed refundable under terms of services of the third-party service." The SBS contract, however, does not identify any specific contract, nor does it identify Xsolla or any other entity as a "third-party service" in this section of the contract. Given that the Xsolla contract is not specifically incorporated in whole, or in part – and Xsolla is not even identified in SBS's contract as a third-party service, the Court cannot conclude that the parties "clearly and unequivocally" incorporated into the SBS contract by reference *any*

1   terms of the Xsolla contract, including the section discussing the refund policy. Thus,

2   the Court should solely interpret the language in SBS's contract.

3          In this case, the SBS contract is clear and unambiguous, and therefore the Court

4   "may not modify the contract or create ambiguity where none exists." *McLaughlin v.*

5   *Travelers Commercial Ins. Co.*, 196 Wn.2d 631, 649 (2020) (internal citations omitted).

6   The SBS contract clearly states that SBS will not provide any refunds; if the terms of

7   use of third-party service entities allow for refunds, users can turn to *those* entities for

8   refunds. Therefore, Plaintiff's breach of contract claim fails, as well as his other claims

9   against SBS given that his other claims are substantially related to the breach of

10  contract claim.

11         Accordingly, the undersigned recommends that SBS's motion to dismiss the

12  complaint, including the class allegations, should be granted.

13                               CONCLUSION

14         Based on the foregoing discussion, this Court should GRANT SBS's

15  motion to dismiss plaintiff's amended complaint and class allegations. The Court should

16  DISMISS the case with prejudice.

17         The parties have **fourteen (14) days** from service of this Report and

18  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP

19  72(b); see also FRCP 6. Failure to file objections will result in a waiver of those

20  objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88

21  L.Ed.2d 435 (1985). Accommodating the above time limit, the Clerk shall set this matter

22  for consideration on **August 19, 2022**, as noted in the caption.

23

24

25

Dated this 4th day of August, 2022.

Theresa L. Fricke
United States Magistrate Judge