THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES FALLS,

                     Plaintiff,

    v.

SOULBOUND STUDIOS, LLC, *et al.*,

                     Defendants.

CASE NO. C21-0922-JCC-TLF

ORDER

This matter comes before the Court on Plaintiff James Falls' objections (Dkt. No. 63) to the report and recommendation ("R&R") of the Honorable Theresa L. Fricke, United States Magistrate Judge (Dkt. No. 60). Having thoroughly considered the R&R, the briefing, and the relevant record, and finding oral argument unnecessary in light of the previous argument before Judge Fricke, the Court OVERRULES Plaintiff's objections, ADOPTS the R&R, and GRANTS Defendant Soulbound Studios LLC's ("SBS") motion to dismiss (Dkt. No. 54) for the reasons explained below.

## I.   BACKGROUND

The R&R sets forth the facts and procedural history of this case, which the Court will not repeat here. (*See* Dkt. No. 60 at 1–3.) In the R&R, Judge Fricke recommended that the Court GRANT Defendants' motion and dismiss Plaintiff's Amended Complaint (Dkt. No. 53) with prejudice. (*Id.* at 8.) Plaintiff lodged the following objections: in reaching her recommendation,

Judge Fricke did not properly apply Washington's rules governing breach of contract claims, nor did she adequately analyze the viability of Plaintiff's remaining claims.[1] (*See generally* Dkt. No. 63.) The Court finds neither argument persuasive.

## II.   DISCUSSION

### A.  Legal Standard

A district court reviews *de novo* the portions of an R&R to which a party properly objects. *See* Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommendations; receive further evidence; or return the matter to the magistrate judge with further instructions. *Id.* Objections must enable the district court to "focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). General objections, or summaries of arguments previously presented, have the same effect of no objection at all because the district court's attention is not focused on any specific issues for review. *See United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). In addition, objections that would not alter the outcome are ineffective as moot. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In order for a claim to overcome a Rule 12(b)(6) motion, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Claims have facial plausibility if a party

---

[1] Plaintiff also suggests Judge Fricke misapplied the Rule 12(b)(6) legal standard, but he fails to state this objection with specificity. (*See* Dkt. No. 63 at 4–5.) Therefore, the Court need not address it. *See Tacquard v. Atty. Gen. of Arizona*, 2020 WL 6781273, slip op. at 4 (D. Ariz. 2020).

pleads factual content that "allows the Court to draw the reasonable inference that [the opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a "sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

**B.  Plaintiff's Objections**

1.  Breach of Contract Claim

Plaintiff asserts Judge Fricke misapplied Washington's contract interpretation rules. (Dkt. No. 63 at 5.) Specifically, according to Plaintiff, Judge Fricke (a) inappropriately determined that payment processor Xsolla, Inc.'s refund policy was *not* incorporated into Plaintiff's contract with SBS, and Judge Fricke (b) interpreted the agreement between Plaintiff and SBS in such a manner so as to render part of it meaningless. (*Id.* at 5–7.)

*a.  Incorporation of Xsolla's Refund Policy*

Plaintiff first argues Xsolla's refund policy is incorporated by reference into his contract with SBS. (*Id.* at 5.) Plaintiff bases this argument on one sentence in the SBS Terms of Use ("SBS Terms") which states the following:

> Any portion of funds raised for the provision of the Services shall be non-refundable, *unless such funds shall be deemed refundable under terms of services of the third-party service* through which those funds for the provision of Services were procured and in effect at the time of provision of those funds.

(Dkt. No. 55-1 at 4 (emphasis added).) Plaintiff asserts this sentence incorporates by reference the refund policy of Xsolla, as the third-party processor of Plaintiff's payment for services from SBS. (Dkt. No. 63 at 6.) Judge Fricke disagreed, finding the vague reference to the terms of service of a third-party insufficient to incorporate Xsolla's policy. (*See* Dkt. No. 60 at 6–8.)

Washington follows the "manifestation theory of contracts" whereby the Court must "attempt to determine the parties' intent by focusing on the objective manifestations of the

agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co*., 115 P.3d 262, 267 (Wash. 2005). The written word is the clearest expression of intent. *Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990). Where the "parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 225 (Wash. 2009). However, it must be clear that the parties had knowledge of and assented to the incorporated terms. *See W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc*., 7 P.3d 861, 865 (Wash. Ct. App. 2000).

Here, the SBS Terms do not identify Xsolla as a third-party service or identify any specific contract to incorporate at all. (*See* Dkt. No. 55-1.) Therefore, the facts as alleged do not show that both parties had knowledge of and assented to Xsolla's refund policy. Accordingly, the Court FINDS that Judge Fricke did not err in her conclusion that the Xsolla refund policy was not incorporated by reference.

### b.  Interpreting all Language in SBS's Terms of Use

Plaintiff next argues that if Xsolla's refund policy is not incorporated by reference into the agreement, the language in the SBS Terms regarding potential refunds, described previously, is rendered meaningless. (Dkt. No. 63 at 6–7.) Meaning, the terms would contain an impossible-to-trigger refund exception, in violation of the edicts of contract interpretation. This is not a compelling argument.

Courts favor interpretations that give effect to *all* contractual provisions, versus those which would render certain terms meaningless or ineffective. *Wagner v. Wagner*, 621 P.2d 1279, 1283 (Wash. 1980). Furthermore, terms should be read contextually, and every effort should be made to harmonize terms that, in isolation, might appear to conflict. *See Nishikawa v. U.S. Eagle High, LLC*, 158 P.3d 1265, 1268 (Wash. Ct. App. 2007). Plaintiff's argument ignores that his own interpretation would render a *significant portion* of the SBS Terms meaningless. His

1    complaint references the SBS Terms in in multiple instances.[2] And the SBS Terms consistently

2    provide that SBS *does not* allow refunds. For example, in the same paragraph as the sentence at

3    issue, the SBS Terms state the following:

4
5          Section 5. Any funds so raised shall be earned by Soulbound Studios and are non-
           refundable . . . In consideration of Soulbound Studios' use of best efforts to develop,
6          produce, and deliver the Services utilizing, in part or in whole, the funds raised for the
           provision of Services, you agree any amounts raised *shall be non-refundable regardless*
7          *of whether or not Soulbound Studios actually delivers the Services.* In consideration for
           the promises by Soulbound Studios, *you agree you shall irrevocable waive any claim for*
8          *refund of any such funds.*

9    (Dkt No. 55-1 at 4–5 (emphasis added).) Additionally, in the section entitled "Purchases and

10   Refunds," the SBS Terms state the following:

11
           Section 7. You acknowledge and accept that all purchases of the Services, as well as any
12         purchase of any Goods, Perks, and Attributes, are FINAL. You acknowledge and agree
           that any applicable fees and other charges, including those paid for licenses to the
13         Services or any Goods, Perks, and Attributes, including any virtual in game currency, *are*
           *not refundable*, in whole or in part. You acknowledge you will not be refunded, receive
14         money, or otherwise be compensated or credited for unused virtual currency or other
           Goods, Perks, and Attributes, or of any unused Services, when an account is closed,
15         whether such closure is voluntary or involuntary.

16   (*Id.* at 5 (emphasis added).)

17          Moreover, as Judge Fricke indicated, and the Court agrees, the provision Plaintiff

18   attempts to hang his case on can be read in harmony with the provisions above. (Dkt. No. 60 at

19   8.) According to Judge Fricke, it simply provides that, while "SBS will not provide any

20   refunds[,] if the terms of use of third-party service entities allow for refunds, users can turn to

21   *those* entities for refunds." (Dkt. No. 60 at 8.) And this is exactly what Plaintiff is doing in

22   California. (*See* Dkt. No. 35.)

23          To interpret the SBS Terms as Plaintiff suggests would unnecessarily create conflict

24
     _____
25          [2] Given the Amended Complaint's frequent references to the SBS Terms, Judge Fricke
     incorporated this document into the complaint. (*See* Dkt. No. 60 at 6–7.) Plaintiff did not object
26   to this finding.

between otherwise harmonized provisions. Therefore, the Court FINDS that Judge Fricke did not err in her interpretation of *all* of the language contained in the SBS Terms.

        2.  <u>Remaining Claims</u>

Plaintiff also argues Judge Fricke's recommendation to dismiss Plaintiff's remaining claims lacks supporting analysis. (Dkt. No. 63 at 7.) At issue are claims alleging (a) Consumer Protection Act ("CPA") violations and (b) unjust enrichment. [3] (*Id.* at 7–8.) But, as SBS points out, Plaintiff is judicially estopped from raising this objection. (*See* Dkt. No. 64 at 5–7.) And even if the Court did not apply the doctrine, Plaintiff's remaining claims are fatally flawed.

Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001). This doctrine can be invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). A review of the transcript of the hearing before Judge Fricke indicates that Plaintiff's current position is not consistent with the position now taken. (*Compare* Dkt. No. 62 at 15, *with* Dkt. No. 63 at 7–8.)

Regardless, as described below, the remaining claims fail as a matter of law.

        a.  *CPA Violations*

To establish a CPA claim, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) an injury to business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins.*

---

[3] Plaintiff lodges no specific objection to the recommended dismissal of his declaratory judgment claim. (*See* Dkt. No. 53 at 12–13; *see generally* Dkt. No. 63.) Accordingly, the Court need not address this issue. *See Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 919 (W.D. Wash. 2020) (district courts only review *de novo* "those portions of the report and recommendation to which specific written objection is made").

*Co.*, 719 P.2d 531, 535 (1986). Here, Plaintiff alleges that SBS released a misleading announcement and video regarding the nature of its anticipated product which "enticed [Plaintiff] and other consumers to prepurchase content and invest in game-development [sic]." (Dkt. No. 63 at 7–8.)

But, in order for such conduct to support a CPA claim, it must, at a minimum, have the "capacity to deceive a substantial portion of the public." *Sing v. John L. Scott, Inc.*, 948 P.2d 816, 819 (Wash. 1997) (citing *Hangman Ridge Training Stables*, 719 P.2d at 535). And the SBS Terms, to which Plaintiff is indisputably bound, state "[y]ou acknowledge and agree the Services provided may differ in certain aspects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds." (Dkt. No. 55-1 at 5.) Moreover, according to those same terms, any services would be made available "on an 'AS IS' and 'AS AVAILABLE' BASIS," and that users "EXPRESSLY AGREE THAT YOUR USE OF THIS SITE IS AT YOUR OWN RISK." (Dkt. No. 55-1 at 8–9 (emphasis in original).) Therefore, the Court finds that, as a matter of law, the video at issue did not have the capacity to deceieve and, accordingly Plaintiff's CPA claim fails.

### b. *Unjust Enrichment*

Unjust enrichment allows "recovery for the value of the benefit retained *absent any* contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (emphasis added). This requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) the defendant retains the benefit under circumstances that make it inequitable for the defendant to retain the benefit without paying for it. *Id.* (quotation omitted). However, unjust enrichment does not apply where there is "a valid express contract" between the same parties covering the same subject matter. *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 101 (Wash. 1943).

Because Plaintiff employs the SBS Terms to assert his breach of contract claim, and at no time alleges that SBS is *not* bound by those terms, he is estopped from arguing the alternative—

that a valid contract did not exist between him and SBS. *See United States ex rel. Walton Tech., Inc. v. Weststar Engr., Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (citing *Chandler v. Washington Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943)). Therefore, the Court finds that Plaintiff's unjust enrichment claim also fails as a matter of law.

**III.    CONCLUSION**

For the foregoing reasons, the Court hereby FINDS and ORDERS as follows:

1.   Plaintiff's objections to the R&R (Dkt No. 63) are OVERRULED;

2.   The Court APPROVES and ADOPTS the R&R (Dkt. No. 60);

3.   Defendants' motion to dismiss (Dkt. No. 54) is GRANTED;

4.   Plaintiff's Amended Class Action Complaint (Dkt. No. 53) is dismissed with prejudice, as amendment would be futile; and

5.   The Clerk is DIRECTED to send copies of this order to Judge Fricke.


DATED this 3rd day of October 2022.


John C. Coughenour
UNITED STATES DISTRICT JUDGE